This version contains the errata dated 2Mar00-e

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

NO. 98-2373

ALFRED P. SANTORO,                                                                      APPELLANT,

v.

TOGO D. WEST, JR.,
SECRETARY OF VETERANS AFFAIRS,                                     APPELLEE.

Before KRAMER, FARLEY, and STEINBERG, *Judges.*

**O R D E R**

This appeal is currently pending before a panel on the Secretary's March 12, 1999, motion to dismiss for lack of jurisdiction. On December 15, 1998, the pro se appellant filed a Notice of Appeal (NOA) from a May 1, 1998, decision of the Acting Chairman of the Board of Veterans' Appeals (BVA or Board) denying reconsideration of a January 29, 1998, BVA decision. The May 1, 1998, decision by the BVA Acting Chairman was accompanied by a BVA Notice of Appellate Rights (BVA Notice). The BVA Notice stated that an appeal of the BVA decision needed to be mailed to "The United States Court of Veterans Appeals [(now the U.S. Court of Appeals for Veterans Claims)], 625 Indiana Avenue, NW., Washington, DC 20004". Although the Board received the appellant's motion for reconsideration on March 30, 1998, within 120 days after the date stamped on the BVA decision, the Court received the appellant's NOA more than 120 days after the date of the BVA's denial of his motion for reconsideration. *See* 38 U.S.C. § 7266(a); *Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991) (holding that motion for reconsideration filed with Board within 120-day judicial-appeal period will toll time limit for filing NOA to this Court).

Accompanying the appellant's NOA was (1) a letter indicating that he had previously mailed, with a return receipt requested, a "request for appeal" to the "Court of Veterans Appeals, 625 Indiana Ave., NW, Washington, DC 20420" [hereinafter "July 1998 letter"], and (2) a photocopy of a U.S. Postal Service (USPS) return-receipt-request card sent to that address and signed for as received on July 27, 1998, by a handwritten notation of "General Counsel PA". The appellant contends that his NOA was misdelivered to the Department of Veterans Affairs (VA) "Board of Appeals [sic] at 810 Vermont Ave" because of an incorrect zip code on the letter. He states that the USPS had recently advised him (although he offers no verification of such advice) that such return-receipt-requested mail should have been returned to him for an address correction, rather than delivered to an incorrect address that merely matched the zip code. In addition, the appellant argues, based on the signature on the returned-receipt card, that a person in the VA Office of General Counsel (OGC) had signed that receipt card and accepted the mailing. Based on that information, the appellant contends that

that signature misled him into believing, at a time when he was not represented by counsel, that the Court had received his NOA within the 120-day statutory judicial-appeal period and that that belief caused him to miss that deadline.

On December 31, 1998, the Secretary transmitted to the Court a copy of the January 1998 BVA decision on appeal, which was also accompanied by a similar BVA Notice; that Notice specified the address for this Court that had been included in the previous Notice, except that "Suite 900" was included after "NW.". On March 12, 1999, the Secretary moved to dismiss, asserting that the appellant's December 15, 1998, NOA was untimely filed. On March 19, 1999, the Court ordered the appellant to show cause, within 20 days, why this appeal should not be dismissed for lack of jurisdiction. On April 6, 1999, the appellant filed a response to the Court's order. The appellant argues that this appeal should not be dismissed because he timely mailed his NOA and then received the signed return-receipt-request card, and that any "mishandling of either delivery of the NOA by the [USPS] or receipt of the NOA by any other administrative office, should not preempt the good faith effort of the [a]ppellant to meet all prescribed periods." He has submitted the original of the return-receipt-request card, postmarked July 27, 1998.

On May 25, 1999, a panel of this Court ordered the Secretary to file a reply to the appellant's December 15, 1998, letter and his response to the Secretary's motion to dismiss. The Secretary was "directed specifically to address the following issues: (1) Whether an OGC employee signed for receipt of the July 1998 letter; (2) if an OGC employee did in fact receive that letter, the significance of such receipt in light of the fact that on July 27 there were still more than 30 days remaining within the 120-day filing period; and (3) the significance of the delivery to VA by the [USPS] of the appellant's July 1998 letter in light of the time remaining within that filing period." In his July 26, 1999, reply, the Secretary, although conceding that an OGC employee did sign for and receive the appellant's July 1998 letter, argues that the appellant's initial lack of due diligence in using the wrong zip code precludes equitable tolling.

On October 12, 1999, the Court stayed proceedings in this case until November 11, 1999, in order to permit the appellant to consider seeking representation. *See In re Panel Referrals in Pro Se Cases*, 12 Vet.App. 316 (1999) (en banc order). On November 9, 1999, the Veterans Consortium Pro Bono Program filed a motion for a stay of proceedings until December 26, 1999, to allow the appellant a reasonable period of time to retain counsel. The Court stamp-granted that motion. On December 2, 1999, Michael P. Horan entered an appearance on behalf of the appellant. However, the appellant has made no further filing.

The Secretary's March 12, 1999, motion implicates the question of the application of the doctrine of equitable tolling to the facts of this case. *See Bailey v. West*, 160 F.3d 1360, 1364 (Fed. Cir. 1998) (characterizing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990), as holding that "equitable tolling is available in suits between private litigants . . . 'where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass'"). In *Bailey*, the U.S. Court of Appeals for the Federal Circuit held that even in absence of **mis**conduct by VA a claimant's detrimental reliance on representations of a VA employee could provide a basis

for the application of the doctrine of equitable tolling to the 38 U.S.C. § 7266(a) judicial-appeal period. *Bailey*, 160 F.3d at 1365. On remand of the *Bailey* case to this Court, the appeal was ultimately dismissed on the joint motion of the parties in light of a settlement reached on the merits by them. *Bailey v. West*, U.S. Vet. App. No. 97-232 (order Aug. 23, 1999).

The instant appeal raises significant questions as to application of the doctrine of equitable tolling to particular facts, and the Court will schedule oral argument to consider that matter. However, before that occurs, the Court is in need of the assistance of the parties on the following matters in connection with the Secretary's motion to dismiss:

(1) Does the appellant's use, in mailing an NOA to this Court, of a mistaken zip code for the Court's address constitute a lack of "due diligence", *Bailey*, 160 F.3d at 1364, because he failed to comply with the instruction for filing an appeal in the Court set forth in the BVA Notice mailed to him by VA with the BVA Acting Chairman's May 1, 1998, decision, as required by 38 U.S.C. § 5104(a); *Thompson (Charles) v. Brown*, 8 Vet.App. 169, 175-76, *vacated in part on other grounds*, 8 Vet.App. 430 (1995)?

(2) Does a lack of due diligence preclude the application of the doctrine of equitable tolling? If not, would VA's conduct warrant the application of the doctrine, even if VA's conduct is not considered to constitute an affirmative misrepresentation upon which the appellant justifiably relies to his or her detriment, such as in *Bailey*, *supra*; *cf. Jones (Carlos) v. West*, 13 Vet.App. 129 (1999) (per curiam order)?

(3) Does the receipt signed by the OGC employee constitute misleading conduct, and does it constitute affirmative misrepresentation such as in *Bailey*, *supra*?

(4) Do the actions of the USPS in this case comply with applicable law and regulation governing the delivery of mail (please provide copies of any authorities cited that are not published in the U.S. Code or the Code of Federal Regulations)? If not, would those USPS actions warrant the application of the doctrine against the USPS were it a party?

(5) If so, can the doctrine be applied against VA based on the action of another governmental entity, here the USPS, *cf.* 28 U.S.C. § 2680(b)?

On consideration of the foregoing, it is

ORDERED that, not later than 15 days after the date of this order, the Secretary file and serve on the appellant, a clarification (with supporting affidavits) of his July 26, 1999, response so as to answer the following questions: (a) Was the appellant's July 1998 letter ever delivered to any VA-occupied building within the 20420 zip code; (b) if so, what chain of events transpired by which that

3

letter was received at OGC Group VII at 625 Indiana Avenue, NW; (c) what information pertinent to this matter can be provided by the other "Group VII employee . . . who customarily delivers to the Court any mail that is misdelivered to Group VII" (Secretary's July 26, 1998, Resp., Declaration of Perterie A. Thompson, page 2 (point 5)) (please provide an appropriate affidavit from that employee); and (d) what are VA's regular policies and practices regarding the handling of mail, including return-receipt mail and mail not addressed to but delivered to VA, and to what extent were they followed in this case?  It is further

ORDERED that, not later than 30 days after the date of service of the clarifications ordered above, the appellant file, and serve on the Secretary, a supplemental memorandum addressing all of the above questions and also incorporating any response that he chooses to make to the Secretary's motion.  It is further

ORDERED that, not later than 15 days after service of the appellant's supplemental memorandum, the Secretary file, and serve on the appellant, a supplemental memorandum addressing the above questions and responding to the appellant's supplemental memorandum.  It is further

ORDERED that oral argument will be scheduled at the convenience of the parties after supplemental briefing is completed.  The Court notes that it intends to grant no extension of time to either party to comply with this order.

DATED:      February 2, 2000                          PER CURIAM.